**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose Guadalupe VALENZUELA,**
**Defendant-Appellant.**

No. 78–1281.

United States Court of Appeals,
Ninth Circuit.

April 5, 1979.

Rehearing Denied June 6, 1979.

**1362**

Michael Nasatir, Los Angeles, Cal., for defendant-appellant.

David R. Hinden, Asst. U. S. Atty., Chief, Appellate Sec., Robert J. Perry, Asst. U. S. Atty., Donald M. Re, Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE and HUG, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

Jose Guadalupe Valenzuela (Jose) appeals his judgment of conviction and sentence to custody entered by the District Court on December 19, 1977 for violation of 21 U.S.C. § 846 (conspiracy), seven counts of violations under 21 U.S.C. § 841(a)(1) (trafficking in heroin), and for violation of 21 U.S.C. § 848 (continuing criminal enterprise).[1] We affirm.

*BACKGROUND FACTS:*

The factual record reveals that the United States Drug Enforcement Administration conducted a long term national and international investigation to neutralize the so-called Valenzuela family organization, one of the major sources of Mexican heroin in the United States. The Valenzuela organization was responsible for the importation of vast quantities of heroin which were distributed to customers from Los Angeles, New York, and other cities. The organization was controlled and directed by Jose and his fugitive brother Fernando Valenzuela (Fernando).

A characteristic of the Valenzuela organization was the use of family members, related by blood or marriage, in the heroin distribution enterprise. A second characteristic of the organization was that it would provide bail to permit members who had been apprehended on heroin charges to flee and thereby avoid prosecution.

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Section 848(c) authorizes the imposition of life imprisonment without possibility of suspension of sentence, probation or parole.

The Government offered the testimony of 55 witnesses, including five informants, and introduced more than 100 documentary exhibits and approximately 144 pounds of heroin. The evidence centered on ten different seizures of heroin made from members of the organization from 1973 through 1977. In addition, there was abundant evidence of the great wealth realized by Jose from trafficking in heroin.

*FIRST SUPERSEDING INDICTMENT:*

■ Jose was indicted along with nine family codefendants and a number of unindicted family members as follows:

Count 1 charged the defendants Jose, Fernando, Manuel Valenzuela (Manuel), Nicolasa Valenzuela (Nicolasa), Alleen Seja Valenzuela (Alleen), Mary Elizabeth Corley (Mary), Edgar Estephen (Edgar), Alonso Lizarraga (Alonso), Bernardina Lizarraga (Bernardina), Sergio Mendoza Rodriguez (Sergio), and 22 unindicted family members with conspiracy to commit offenses against the United States (§ 846 and § 841(a)(1));

Count 2 charged two unindicted family members with heroin trafficking (ten ounces) and the defendants Jose and Fernando as aiders and abettors thereto (§ 841(a)(1) and 18 U.S.C. § 2);[2]

Count 3 charged one unindicted family member and defendant Manuel with heroin trafficking (six ounces) and the defendant Jose as an aider and abettor thereto (§ 841(a)(1) and § 2);

Count 4 charged three unindicted family members with heroin trafficking (2.2 pounds) and the defendants Jose and Fernando as aiders and abettors thereto (§ 841(a)(1) and § 2);

Count 5 charged two unindicted family members and the defendant Alleen with heroin trafficking (4.4 pounds) and the defendants Jose and Fernando as aiders and abettors thereto (§ 841(a)(1) and § 2);

Count 6 charged four unindicted family members with heroin trafficking (44 pounds) and the defendants Jose and Fernando as aiders and abettors thereto (§ 841(a)(1) and § 2);

Count 7 charged two unindicted family members with heroin trafficking (44 pounds) and the defendants Jose and Fernando as aiders and abettors thereto (§ 841(a)(1) and § 2);

Count 8 charged the defendants Jose, Mary, Edgar, Alonso, Bernardina, and Sergio with heroin trafficking (four pounds) (§ 841(a)(1)); and

Count 9 charged Jose, in concert with at least five other persons with whom Jose acted as organizer, supervisor, and manager, with a continuing series of violations, obtaining therefrom substantial income and resources as alleged in Counts 1 through 8 (§ 848).

*JURY VERDICTS AND SENTENCE:*

The jury found the following defendants guilty on all counts as respectively charged:

Jose (Counts 1 through 9);

Manuel (Counts 1 and 3);

Mary (Counts 1 and 8);

Bernardina (Counts 1 and 8);

Alonso (Counts 1 and 8);

Alleen (Counts 1 and 5); and

Nicolasa (Count 1).

Jose was sentenced to 15 years imprisonment on each of Counts 1 through 8 and to life imprisonment on Count 9. The sentences on Counts 1 through 4 were imposed consecutively (total 60 years), and the sentences on Counts 5 through 8 were also imposed consecutively (also 60 years). The two 60-year terms were imposed to run *concurrently* with the term of life imprisonment. The life sentence, pursuant to § 848(c), is without possibility of suspension of sentence, probation or parole.

---

**2.** Jose obliquely claims he cannot be charged as an aider and abettor to an unindicted principal charged with commission of a crime. The claim is meritless. *Feldstein v. United States*, 429 F.2d 1092, 1095 (9th Cir. 1970), cited in *United States v. Bryan*, 483 F.2d 88, 93 (3d Cir. 1973).

18 U.S.C. § 2(a) provides:

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

*APPEAL OF THE DEFENDANTS*:

All of the convicted defendants, except Alleen and Nicolasa, have appealed. The appeals of Manuel, Alonso, Bernardina, and Mary are treated in a separate opinion by this Court entered in *United States v. Valenzuela,* on March 23, 1979, 596 F.2d 824 (9th Cir. 1979).

*ISSUES*:

Jose presents six specific issues on review, of which we deem the following three to be dispositive of this appeal:

1. Whether the offenses charged in Counts 1 through 8 of the indictment merge in the conviction on Count 9, requiring that the judgments and sentences entered thereon be vacated and that the matter be remanded for resentencing.

2. Whether the search warrant executed August 9, 1977 at 736 Helmsdale Avenue, Valinda, California was constitutionally insufficient and was improperly executed, and whether the officers' entry into the adjoining garage was improper under California law.

3. Whether the provisions of § 848 are void as unconstitutionally vague or ambiguous.

*DISCUSSION*:

*Issue 1*:

■ Jose relies on *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), for the proposition that both his Count 1 § 846 conspiracy charge and his Counts 2 through 8 § 841(a)(1) substantive charges are lesser included offenses of his Count 9 § 848 continuing criminal enterprise charge. Accordingly, he argues that the convictions on the lesser charges merge into the § 848 conviction and that the case must be remanded for resentencing because he was sentenced to custody on each of those counts.

Jeffers was convicted for violations of § 846 and § 848, and the District Court levied monetary fines upon each of those convictions. The aggregate of the monetary fines of each of those two convictions exceeded the maximum amount of a permissible fine under § 848. In *Jeffers,* the Supreme Court opined at 155:

"The first issue to be considered is whether Congress intended to allow cumulative punishment for violations of §§ 846 and 848. We have concluded that it did not . . . ."

Thereupon the cumulative monetary fines were reduced to the extent that the same exceeded the maximum fine permissible under the criminal enterprise statute.

In Jose's case, the sentences imposed on his convictions of the conspiracy and substantive charges were made concurrent with his life sentence on the criminal enterprise conviction. Jose's resentencing argument is without merit due to the absence of any excessive cumulative punishment effect. *See United States v. Davis,* 548 F.2d 840, 845 (9th Cir. 1977). The imposition of concurrent sentences does not affect Jose's chances of parole, *cf. Audett v. United States,* 265 F.2d 837, 848 (9th Cir. 1959), because the life sentence under the continuing criminal enterprise section is not subject to parole. Section 848(c). *See also Bradley v. United States,* 410 U.S. 605, 611, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973); *O'Neal v. United States,* 332 F.2d 152, 153–54 (9th Cir. 1964), and *United States v. Gudino,* 432 F.2d 433, 434 (9th Cir. 1970). In *Jeffers,* Justice Blackmun restricted his discussion to the imposition of cumulative monetary fines. In fact, while *consecutive* prison sentences had been imposed for the conspiracy and criminal enterprise convictions, Justice Blackmun specifically noted that the consecutive sentences did not raise the cumulative punishment issue as the monetary fines did because of the unavailability of parole under the criminal enterprise statute. 432 U.S. at 155, n.24, 97 S.Ct. 2207.

■ Jose further contends that the Count 1 conspiracy charge is a lesser included offense of the Count 9, § 848, charge, and, therefore, may not be considered as a violation for the purposes of § 848. However, since the jury found Jose guilty as charged on all nine counts, we may disregard the jury's possible consideration of the Count 1 conspiracy charge in finding a continuing

series of three or more violations on the part of Jose, as required by § 848.

■ Since we ultimately conclude that Jose's judgment of conviction under Count 9 and sentence to life custody is valid, we have no need to inquire into the propriety of other lesser or equal concurrent sentences since Jose's prison term under Count 9 will remain the same whatever the resolution of the other sentences might be. *United States v. Walls,* 577 F.2d 690, 699 (9th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978). *See also United States v. Thomas,* 586 F.2d 123, 131 (9th Cir. 1978).

*Issue 2:*

This Court upheld the validity of the search warrant and the officer's entry thereunder into the Helmsdale residence while dealing with Bernardina's appeal. *United States v. Valenzuela,* 596 F.2d at 829. However, Jose's issue presents a somewhat more difficult problem because the officer making the entry apparently announced himself just as he entered the open outside door to the garage. Prior to his entry, he observed the occupants in the garage "cutting" a brown powder which appeared to be heroin. This led him to draw his gun and badge, enter the garage while simultaneously announcing his authority, and place Jose and the other occupants under arrest. A subsequent search of the garage produced heroin, a common "cutting" drug, and other drug paraphernalia. Jose contends that under California law, the officer's failure to knock at the open garage door and his entry contemporaneously with announcement subjected all subsequent observations and seizures to suppression.

■ Under the federal statute, this entry would be proper for two reasons. First, we have held that entry through an open door is not a "breaking" within the meaning of the statute. *United States v. Scharf,* 421 F.2d 1239, 1240 (9th Cir. 1970); *Reyes v. United States,* 417 F.2d 916, 919 (9th Cir. 1969); *Ng Pui Yu v. United States,* 352 F.2d 626, 632 (9th Cir. 1965). Second, the garage entry was made only after the proper entry at the residence, and "officers are not required to announce at *every* place of entry; one proper announcement under [18 U.S.C.] section 3109 is sufficient." *United States v. Bustamante-Gamez,* 488 F.2d 4 at 10 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974), (emphasis in original) (unannounced entry at garage held proper because made simultaneously with proper entry at front door). The fact that the garage entry was through an open door subsequent to a proper entry at another door also leads us to find that the garage entry was constitutionally reasonable.[3]

---

**3.** The view that certain knock-notice requirements are incorporated into the Fourth Amendment is partially supported by the fact that "[t]he roots of section 3109, commonly referred to as the 'rule of announcement,' extend well back in the history of Anglo-American jurisprudence." *United States v. Bustamante-Gamez,* 488 F.2d at 9 (footnote omitted). But the Supreme Court, while observing that this rule is "deeply rooted in our heritage and should not be given grudging application," *Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958), has at the same time apparently recognized that the rule did not extend to open doors at common law:

"Whatever the circumstances under which breaking a door to arrest for felony might be lawful, however, the breaking was unlawful where the officer failed first to state his authority and purpose for demanding admission. The requirement was pronounced in 1603 in *Semayne's Case,* 5 Coke Co.Rep. 91a, 11 E.R.C. 629, 77 Eng.Repr. 194, at 195: 'In all cases where the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. *But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors . . . .*' (Emphasis supplied.) "The requirement stated in *Semayne's Case* still obtains. It is reflected in 18 U.S.C. § 3109 [and] in the statutes of a large number of States . . . ." *Id.* at 308, 78 S.Ct. at 1195 (footnote omitted, emphasis in original). In *Ng Pui Yu v. United States,* 352 F.2d at 632, we relied in part upon this passage to hold that entry through an open door was not within 18 U.S.C. § 3109. It is a simple matter for the occupant of a dwelling to close the door, and thus prevent unannounced entry in violation of his or her reasonable expectation of privacy. In view of this fact, and in view of the common law history of the rule of announcement, we cannot hold

■ California law is more problematic because the state statutes have been held applicable to open outer doors in some, if not all, circumstances. *See People v. Bradley*, 1 Cal.3d 80, 87–88, 81 Cal.Rptr. 457, 460–62, 460 P.2d 129, 132–34 (1969); *People v. Castenada*, 58 Cal.App.3d 165, 170, 129 Cal.Rptr. 755, 757 (1976). *People v. Beamon*, 268 Cal.App.2d 61, 65, 73 Cal.Rptr. 604, 607 (1968).[4] We cannot liken this entry through the open outside door of the garage to an entry through an open inside bedroom door, to which the California statute has been held inapplicable. *See Castenada*, 58 Cal.App.3d at 170, 129 Cal.Rptr. at 757; *People v. Livermore*, 30 Cal.App.3d 1073, 106 Cal.Rptr. 822 (1973). *People v. Bruce*, 49 Cal App.3d 580, 587, 122 Cal.Rptr. 648, 652 (1975), is distinguishable because the entry there was through a closed outside door of a detached garage located on occupied residential property.

We conclude that the garage entry was proper under California law because it is clear that the officer entered not only to execute the warrant, but to arrest the persons inside. The California courts have held that the arrest entry statute, Cal.Penal Code § 844, does not apply where an officer perceives, through an open door, an occupant actually engaged in the commission of a narcotic offense in his immediate presence. *See People v. Baldwin*, 62 Cal.App.3d 727, 740, 133 Cal.Rptr. 427, 438 (1976); *People v. Glasspoole*, 48 Cal.App.3d 668, 674, 121 Cal.Rptr. 736, 739–40 (1975); *People v. Peterson*, 9 Cal.App.3d 627, 632–33, 88 Cal. Rptr. 597, 599–601 (1970); *People v. Boone*, 2 Cal.App.3d 66, 68–69, 82 Cal.Rptr. 398, 399–400 (1969). Here, because of the search warrant, the officer had a right to be near the wide open garage door. His observa-

tions through the open door prior to his entry would permit him reasonably to believe that he was observing the commission of a narcotics offense. We find his testimony adequate to show that he in fact formed such a reasonable belief, and thus that the entry was proper.

*Issue 3* :

■ Section 848 is the continuing criminal enterprise section of the Comprehensive Drug Abuse, Prevention and Control Act (Act). Jose contends that the language of that statutory provision is unconstitutionally vague and cannot provide the basis for a criminal conviction.

The Second, Fifth, Sixth and Eighth Circuits have each upheld the Section's constitutionality under an attack of vagueness. *United States v. Sperling*, 506 F.2d 1323, 1343 (2d Cir. 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 and 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); *United States v. Sisca*, 503 F.2d 1337, 1345 (2d Cir.), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Manfredi*, 488 F.2d 588, 602–03 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); *United States v. Cravero*, 545 F.2d 406, 410–11 (5th Cir. 1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977); *United States v. Collier*, 493 F.2d 327, 329 (6th Cir.), *cert. denied*, 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974), and *United States v. Kirk*, 534 F.2d 1262, 1277–78 (8th Cir. 1976), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977). We subscribe to and join in the respective rationales of those authorities.

that in ordinary circumstances an unannounced but otherwise proper entry through an open door is unreasonable.

It should also be pointed out that we reached our holding in *Bustamante-Gamez*, that "officers are not required to announce at *every* place of entry," 488 F.2d at 10 (emphasis in original), only after stating our awareness of the constitutional concerns involved.

**4.** In *People v. Bradley*, the California Court also apparently recognized that the common law

did not require announcement prior to entry through open doors. *See* 1 Cal.3d at 86, 81 Cal.Rptr. at 460, 460 P.2d at 132, quoting *Semayne's Case*, note 3. However, the Court went on to hold that the California arrest-entry statute, Cal.Penal Code § 844, should be construed to apply to open outer doors in some circumstances "[e]ven if at common law an unannounced intrusion through an open door was lawful." 1 Cal.3d at 87, 81 Cal.Rptr. at 461, 460 P.2d at 133.

Jose contends that § 848 is patently and facially invalid and that the above-mentioned authorities have not properly distinguished between the facial validity of § 848 and its constitutionality as applied to the facts of a particular case. We disagree. Jose's premise ignores the settled principle that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). This principle was applied in *Kirk* at 1277, 95 S.Ct. 710 and we further explicate the analysis applied there.

The due process requirement of definiteness is violated by a criminal statute that fails to provide adequate notice to a person of ordinary intelligence that his or her contemplated conduct is unlawful. *Jordan v. DeGeorge*, 341 U.S. 223, 231–32, 71 S.Ct. 703, 95 L.Ed. 886 (1951). *See also, e. g., Papachristou v. Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

Jose constructs his vagueness claim around a series of phrases extracted from the language of § 848. He submits that the phrases "continuing series of violations," "undertaken . . . in concert," "organizer, a supervisory position, or any other position of management," and "substantial income or resources" are too indefinite to provide the basis for his conviction under Count 9. The difficulty we perceive in such an argument is that these phrases cannot properly be considered in the abstract. They draw meaning both from each other and from their larger statutory context.

The phrase "undertaken . . . in concert" has already received the attention of the Supreme Court. In *Jeffers*, 432 U.S. at 148–49, 97 S.Ct. 2207, the Court indicated that "[i]n the absence of any indication from the legislative history or elsewhere to the contrary, the . . . likely explanation is that Congress intended the word 'concert' to have its common meaning of agreement in a design or plan."[5] While the *Jeffers* Court was not faced with a vagueness claim, its observation is relevant here. We believe that the phrase "undertaken . . . in concert" is sufficiently precise to notify a person of ordinary intelligence that any agreement in a plan or design to accomplish acts prohibited by the Act would fall within the language of § 848.

We also think that the remaining contested phrases extracted from § 848 are sufficiently definite to satisfy due process strictures. Thus, while all dictionaries[6] may not precisely specify the number of related, successive events which are necessary to constitute a "series,"[7] we think the District Court's instruction that a series must consist of three or more federal narcotic law violations was squarely based on common usage. And, as was noted in *United States v. Collier*, 358 F.Supp. 1351, 1355 (E.D.Mich. 1973), aff'd, 493 F.2d 327 (6th Cir.), cert. denied, 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974), the definition of "series" contained in Webster's Third New International Dictionary (1966) reflects this usage.[8]

Similarly, the words encompassed within the phrase "organizer, a supervisory position, or any other position of management" enjoy a wide currency in the business community and are commonly understood by members of the general public. In enacting § 848, Congress was clearly concerned with large-scale profit-making enterprises engaged in the illegal importation, manufacture and distribution of controlled substances. The language under consideration

---

**5.** *See* 432 U.S. 148, n. 14, 97 S.Ct. 2215 n. 14.

**6.** *See, e. g.*, The Random House College Dictionary (Rev.Ed.1975).

**7.** Jose's vagueness contention with respect to the phrase "continuing series of violations" focuses on the purported ambiguity of the word "series."

**8.** The fact that some question may exist as to whether a series could include just two events is of no solace to Jose. *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

was clearly chosen to distinguish minor enterprise "employees" from those who conceive and coordinate enterprise activities.

Finally, we see no fatal vagueness problem in the requirement that a criminal enterprise defendant must have received "substantial income or resources" from his or her activity. The criminal enterprise statute would have been valid even if Congress had omitted such a financial limitation. We see no reason to strike down the statute because Congress has chosen to provide some measure of protection to petty criminal enterprise defendants in this regard.

Therefore, Jose cannot reasonably contend that he was not sufficiently notified of the illegality of his conduct as proscribed by § 848.

The evidentiary record here is replete with relevant evidence to support the jury's findings that Jose violated those clearly worded and commonly known specific acts and conduct as proscribed by § 848, and to support the jury's verdict of Jose's guilt beyond a reasonable doubt under Count 9.

Jose's remaining three issues of a lack of evidence to support the jury's verdict of his guilt under Counts 1, 2, 3, 4, 5, and 6, fatal variance in the proof, and lack of appropriate instructions to the jury are each without merit.

The judgment of conviction and sentence to custody entered by the District Court is affirmed.

AFFIRMED.