UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael L. MONTALVO, Defendant–
Appellant.

No. 01–17046.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2002.

Filed June 9, 2003.

David M. Porter, Assistant Federal Defender, Sacramento, California, argued for the defendant-appellant. Quin Denvir, Federal Defender, and Carolyn M. Wiggin, Assistant Federal Defender, Sacramento, CA, joined him on the briefs.

Thomas E. Flynn, Assistant United States Attorney, Sacramento, CA, argued for the plaintiff-appellee. John K. Vincent, United States Attorney, Sacramento, CA, joined him on the brief.

Before KOZINSKI and KLEINFELD, Circuit Judges, and REED, JR.,* District Judge.

PER CURIAM Opinion; Concurrence by Judge KOZINSKI.

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

## OPINION

PER CURIAM.

We consider whether the new rule announced in *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), is retroactively applicable to criminal convictions that had become final by the time of the Supreme Court's decision.

### I

Montalvo was charged with one count of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, and one count of engaging in a continuing criminal enterprise (CCE), 21 U.S.C. § 848. The jury convicted him of the CCE count, and the trial judge sentenced him to life imprisonment. Conspiracy being a lesser included offense of a CCE violation, *Rutledge v. United States,* 517 U.S. 292, 300, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), the jury did not render a verdict on the conspiracy charge.

After numerous unsuccessful appeals on direct review, Montalvo's conviction became final in 1996 when the Supreme Court denied his petition for certiorari. *See Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Three years later, the Supreme Court decided *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), where it interpreted, for the first time, the phrase "a continuing series of violations" in 21 U.S.C. § 848(c)(2).

The CCE statute reads:

[A] person is engaged in a continuing criminal enterprise if—

  (1) he violates any provision of [these subchapters] the punishment for which is a felony, and

  (2) such violation is a part of *a continuing series of violations* of [these subchapters]—

    (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

    (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c) (emphasis added).

*Richardson* held that a jury "must *unanimously* agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed *each* of the individual 'violations' necessary to make up that 'continuing series.'" 526 U.S. at 815, 119 S.Ct. 1707 (emphasis added). If a "series" requires three or more violations, *United States v. Valenzuela,* 596 F.2d 1361, 1367 (9th Cir.1979), *Richardson* demands that the jury unanimously agree on at least three specific predicate felonies that constitute the "continuing series" before it may convict.

Here, the government alleged that Montalvo was involved in thirteen felony drug offenses. Suppose Jurors I–VI found that Montalvo had committed crimes 1–3 and nothing else, and Jurors VII–XII found that Montalvo had committed crimes 4–6 and nothing else. Under *Richardson's* unanimity requirement, the jury could not return a CCE verdict—even if all the jurors agree that Montalvo, in one way or another, committed at least three drug violations. Only if twelve jurors all agree on at least three *specific* predicate offenses (say, offenses 1, 4 and 5) may they convict under the CCE statute. Furthermore, the court must give a "specific unanimity" instruction to this effect. *Richardson,* 526 U.S. at 816, 119 S.Ct. 1707.

Montalvo's trial took place before *Richardson,* and the trial judge did not give the

instruction that *Richardson* would subsequently require.[1] Soon after *Richardson* was decided and while his habeas petition was still pending before the district court, Montalvo filed a "partial reply" to the government's opposition to his petition and challenged the jury instruction as inadequate. The district court denied the writ, holding that Montalvo's *Richardson* claim could not be asserted under the anti-retroactivity principle of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

## II

"[N]ew constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced, unless the new rule [1] places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, or [2] could be considered a watershed rule of criminal procedure." *Bousley v. United States*, 523 U.S. 614, 619–20, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citations omitted); *see Teague v. Lane*, 489 U.S. 288, 311–12, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). In short, *Teague's* anti-retroactivity principle "applies only to procedural rules"; "it is inapplicable to the situation in which [the Supreme Court] decides the meaning of a criminal statute enacted by Congress."

*Bousley*, 523 U.S. at 620, 118 S.Ct. 1604. The dispositive question here, then, is whether *Richardson's* requirement—which admittedly is a "new" rule under *Teague*, 489 U.S. at 301, 109 S.Ct. 1060—is substantive or procedural.[2]

Every one of our sister circuits that have confronted the issue agrees that *Richardson* announced a new substantive rule of criminal law. *See Santana–Madera v. United States*, 260 F.3d 133, 138–39 (2d Cir.2001); *United States v. Lopez*, 248 F.3d 427, 431–32 (5th Cir.2001); *Murr v. United States*, 200 F.3d 895, 904–06 (6th Cir.2000); *Lanier v. United States*, 220 F.3d 833, 838 (7th Cir.2000); *United States v. Barajas–Diaz*, 313 F.3d 1242, 1245 (10th Cir.2002); *Ross v. United States*, 289 F.3d 677, 681 (11th Cir.2002) (per curiam).

We join that unanimous view. In *Richardson*, the Supreme Court was faced with the question whether the phrase "*series* of violations" refers to a single element—namely, a "series"—with the individual "violations" merely constituting the underlying brute facts or "means" as to which jury unanimity is not required, *see Andersen v. United States*, 170 U.S. 481, 499–501, 18 S.Ct. 689, 42 L.Ed. 1116 (1898), or whether the phrase "series of *violations* " creates several elements—namely, the discrete "violations"—with respect to each of which the jury must agree unanimously and separately, *see Andres v. United States*, 333

---

**1.** Although the trial court did not instruct the jury that it must reach unanimity with respect to at least three specific drug felonies that make up the "continuing series," it did give a general unanimity instruction as follows:

> It is very important for you to attempt to reach a unanimous verdict, but, of course, only if each of you can do so after having been—if after having made your own conscientious independent decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Reporter's Transcript at 2404.

**2.** Because we hold that *Richardson* fits within *Teague's* first exception, we need not address the applicability of the second exception—whether *Richardson* counts as a "watershed rule[ ] of criminal procedure," *Teague*, 489 U.S. at 311, 109 S.Ct. 1060, that "alter[s] our understanding of the bedrock procedural elements [essential to] the fairness of a particular conviction." *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part, dissenting in part).

U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948). *Richardson v. United States*, 526 U.S. at 817–24, 119 S.Ct. 1707. After examining the statute's language in the context of what Congress was trying to accomplish, the Supreme Court deemed the latter more consistent with our tradition of jury unanimity. *Id.*

What's significant for our purposes is that, in analyzing what constitutes "elements" as opposed to brute facts or "means," *Richardson* was "decid[ing] the meaning of a criminal statute enacted by Congress," *Bousley*, 523 U.S. at 620, 118 S.Ct. 1604. *Richardson* is, in this respect, analytically indistinguishable from *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), where the Supreme Court interpreted the meaning of the word "use" in a criminal statute that imposes a five-year minimum sentence upon any person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm," 18 U.S.C. § 924(c)(1)(A). *Bailey* similarly looked to "language, context, and history" before concluding that the element "use" in the statute requires "*active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey*, 516 U.S. at 143–44, 116 S.Ct. 501. Just as *Bailey* narrows the reach of the firearms statute, *Richardson* restricts the class of persons who can be convicted for CCE—i.e., only those individuals who committed at least three predicate drug felonies, as determined by a unanimous jury beyond a reasonable doubt. Because the new rule announced

in *Bailey* is substantive and therefore retroactively applicable to criminal convictions that have become final, *Bousley*, 523 U.S. at 619–21, 118 S.Ct. 1604, we reach the same conclusion about the rule established by *Richardson*. *See also United States v. Mitchell*, 867 F.2d 1232, 1233 (9th Cir.1989) (per curiam) (holding that *McNally v. United States*, 483 U.S. 350, 356–60, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which narrowed the federal mail fraud statute to protect only property rights, is retroactive); *United States v. Sood*, 969 F.2d 774, 775–76 (9th Cir.1992) (holding that *United States v. Bordallo*, 857 F.2d 519, 524 (9th Cir.1988), which narrowed the federal bribery statute to exclude application to Guam, is retroactive); *United States v. McClelland*, 941 F.2d 999, 1001 (9th Cir.1991) (holding that *United States v. Aguon*, 851 F.2d 1158 (9th Cir.1988) (en banc), which held "inducement" to be an element of the federal extortion statute, is retroactive).

We hold that *Teague* does not bar Montalvo from raising a *Richardson* claim in his section 2255 habeas petition.

### III

We must next decide whether the trial judge's failure to give a *Richardson* specific unanimity instruction was harmless.[3]

■ ■ **A.** We can quickly reject Montalvo's argument that *Richardson* violations are structural errors subject to the automatic reversal rule. The "general rule" is that constitutional errors do not require reversal of a conviction, but are

---

**3.** We held in *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1572–73 (9th Cir. 1989), that failure to instruct the jury on the specific unanimity requirement could be harmless. We also held specifically in Montalvo's direct appeal, *Montalvo I*, 972 F.2d 1346, 1992 WL 184342 (9th Cir. Aug.4, 1992), that he was not prejudiced by the jury instruc-

tion. These decisions, however, preceded *Richardson*. We now consider whether the analysis changes after *Richardson*. *See United States v. Scrivner*, 189 F.3d 825, 827 (9th Cir.1999) (holding that law of the case does not bar reconsideration when there has been an intervening change in the law).

susceptible to harmless error review. *Arizona v. Fulminante,* 499 U.S. 279, 306–07, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (collecting cases). The list of structural defects is short and limited: "total deprivation of the right to counsel at trial," *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); "a judge who was not impartial," *see Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); "unlawful exclusion of members of the defendant's race from a grand jury," *see Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); "the right to self-representation at trial," *see McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); "the right to [a] public trial," *see Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). *Fulminante,* 499 U.S. at 309–10, 111 S.Ct. 1246; *see also Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (holding that a constitutionally deficient reasonable doubt instruction cannot be harmless error).

■ Because *Richardson* errors affect only the way the jury is instructed on an element of the offense, they do not taint the trial "from beginning to end" or undermine "the framework within which the trial proceeds." *Fulminante,* 499 U.S. at 309–10, 111 S.Ct. 1246. The Supreme Court has held that "an instruction that omits an element of the offense" altogether "does not *necessarily* render a criminal trial fundamentally unfair," and the error is therefore susceptible to harmless-error analysis. *Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). A fortiori, an instruction that merely omits the unanimity requirement with respect to an element of the offense cannot be categorized as structural. This conclusion is consistent with the unanimous view of our sister circuits. *See Ross v. United States,* 289 F.3d 677, 681–82 (11th Cir.2002); *Santana–Madera v. United States,* 260 F.3d 133, 139 (2d Cir.2001); *United States v. Jefferson,* 215 F.3d 820, 823 (8th Cir.2000); *United States v. Escobar-de Jesús,* 187 F.3d 148, 161–62 (1st Cir.1999).

■ There remains the question of which harmless error review standard applies: *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."), or the more deferential *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (requiring "substantial and injurious effect or influence in determining the jury's verdict" before the conviction may be set aside) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946))?

We held in *Bains v. Cambra,* 204 F.3d 964 (9th Cir.2000), that the more deferential *Brecht* standard "should apply uniformly in all federal habeas corpus cases under § 2254." *Id.* at 977. Montalvo argues that the reasons behind *Bains's* adoption of *Brecht* in section 2254 cases are inapplicable here. In Montalvo's view, the "interests laid out in *Brecht,*" such as "finality of state court convictions, comity, federalism, and prominence of the trial itself … are notably lacking in federal habeas review of *federal* convictions under 28 U.S.C. § 2255." Appellant's Opening Br. at 17 n. 14 (internal quotation marks omitted).

While Montalvo is right that federalism interests are not implicated in the section 2255 context, we do not read *Brecht's* "substantial and injurious effect" standard as resting primarily on federalism concerns. It is, more than anything else, motivated by "considerations underlying our habeas jurisprudence," *Brecht,* 507 U.S. at 633, 113 S.Ct. 1710, that apply equally to collateral attacks on both feder-

al and state convictions—considerations such as the different purposes of direct and collateral review and the importance of finality in criminal convictions. Our reading of *Brecht* is fortified by the case's citation to *Teague's* anti-retroactivity principle to illustrate the general practice of "appl[ying] different standards on habeas than [those] on direct review." *Id.* at 634, 113 S.Ct. 1710. We have already held that *Teague* applies equally to sections 2254 and 2255 habeas cases. *United States v. Sanchez–Cervantes,* 282 F.3d 664, 667–68 (9th Cir.2002). We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254. *See also Murr v. United States,* 200 F.3d 895, 906 (6th Cir.2000) (applying *Brecht* on federal habeas review of defendant's CCE conviction).

■ **B.** The district court denied Montalvo's petition only because it held—contrary to our conclusion in Part II, *supra*—that Montalvo's *Richardson* claim was *Teague*-barred. It further held, however, that if *Teague* did not bar Montalvo from asserting the claim on collateral review, the error was not harmless. After reviewing the record de novo, *see Ghent v. Woodford,* 279 F.3d 1121, 1126 (9th Cir.2002), we conclude that the trial court's failure to instruct the jury on *Richardson's* specific unanimity requirement did not have a "substantial and injurious effect" on the jury's verdict.

■ The district court started down the right track when it noted that there are at least two circumstances where a *Richardson* jury instruction error is per se harmless: first, if the jury that convicted the defendant of a CCE charge also convicted him of at least three related drug violations alleged to be predicate violations constituting the "continuing series"; second, if the district court instructed the jury that a "continuing series of violations" means

"three or more violations," and the government introduced evidence of only three predicate offenses at trial. In both of these scenarios, the jury would have *necessarily* agreed unanimously that defendant committed at least three specific predicate felonies that make up the "continuing series." *See United States v. Brown,* 202 F.3d 691, 700 (4th Cir.2000).

The district court veered off course when it held that, because neither of these scenarios is present here—i.e., there was no other jury verdict beyond Montalvo's CCE conviction, and the government presented not only three, but thirteen, drug violations—"[i]t is unknowable from the record of this complex case which acts the jury unanimously agreed upon, [and] it is *possible* that some jurors found some acts to have been committed, while other jurors found others, but the jury was able to agree unanimously only that there were three [or more] that were committed." Order at 43 (emphasis added).

That all twelve jurors did not *necessarily* find Montalvo guilty of three specific predicate drug felonies is not dispositive. *See California v. Roy,* 519 U.S. 2, 4, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (per curiam) (holding that a harmless error analysis that asks whether "the jury *necessarily* found the omitted element" is "far too strict" under *Brecht* ). The question is "whether, *in light of the record as a whole,*" the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 638, 113 S.Ct. 1710 (emphasis added and internal quotation marks omitted). This inquiry is not a matter of pure logic, but of sensitive judgment based on the case presented to the jury by the prosecution and the defense.

Here, the government's case against Montalvo was overwhelming. In addition to witness testimony, there was documen-

tary evidence showing Montalvo's involvement in at least thirteen instances of drug distribution. *See, e.g.,* Gov't Exhibits 601A–C. The thirteen discrete offenses were never contested individually, but were treated as a group. In fact, Montalvo didn't even dispute the existence of the whole conspiracy, only the extent of his own involvement. As Montalvo's counsel summed up the defense's theory, there was a conspiracy and a series of drug distributions alright, but everything was masterminded by the Woodhouse brothers who wanted to pin blame on Montalvo in exchange for reduced sentences: "Montalvo did not understand the intricacies. He did not understand the Woodhouse operation. The fact that he was at the Woodhouse properties, properties that he arranged for Woodhouse, the fact that he may even had some suspicion does not make him guilty of anything." Reporters Transcript at 2298; *see also id.* at 2283 ("My suggestion to you, and I believe the evidence supports that this is actually a Woodhouse operation."); *id.* at 2287 ("Obviously, if you believe Woodhouse, what else is there to talk about?"); *id.* at 2297 ("Greg Woodhouse was the accountant who paid the money, gave instructions, set up routes, made a decision as to which people would do what in terms of customers, not Montalvo."). Furthermore, according to the defense, the Woodhouses' attempt to blame Montalvo was helped by an ATF agent's vendetta against the defendant.

Because we have already rejected Montalvo's various other challenges to his conviction on direct appeal, *see Montalvo I,* 972 F.2d 1346, 1992 WL 184342 (9th Cir. Aug.4, 1992); *Montalvo II,* No. 92–16532 (9th Cir. Nov. 30, 1992); *Montalvo III,* 74 F.3d 1247, 1996 WL 2205 (9th Cir. Jan. 3, 1996); *Montalvo IV,* 172 F.3d 60, 1999 WL 51547 (9th Cir. Jan. 27, 1999), the guilty verdict necessarily means that all twelve jurors found that Montalvo committed at least three predicate felonies (though there is a logical possibility that they did not agree on which ones), that he supervised five or more persons and that he obtained substantial income or resources. *See* 21 U.S.C. § 848(c). Montalvo's defense at trial focused exclusively on undermining the government's case with respect to the position he occupied in the conspiracy's hierarchy—a defense the jury rejected—not the thirteen discrete drug transactions. The *Richardson* error was therefore harmless. *See Brown,* 202 F.3d at 700–01 (holding that a *Richardson* error is harmless if "the element was uncontested and supported by overwhelming evidence" (footnote omitted)). We are not free to disturb the jury's credibility determinations and its finding that Montalvo was the boss.

## IV

In sum, we affirm the district court's denial of Montalvo's petition, but on different grounds. The *Richardson* claim was not *Teague*-barred and could be asserted on collateral review. Nevertheless, the error did not have a "substantial and injurious effect" on the jury's verdict under *Brecht.*

**AFFIRMED.**

KOZINSKI, Circuit Judge, concurring.

I agree that Montalvo's conviction should be affirmed, but on different grounds: I do not believe *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), established a new substantive rule of criminal law; it is, rather, a rule of criminal procedure and therefore *Teague*-barred as to cases that had become final before *Richardson* was decided. While the majority's approach is supported by every circuit that has considered the issue, I believe it is wrong as a matter of theory and further blurs the

already fuzzy line between substance and procedure under *Teague.*

The confusion stems, in no small measure, from the shorthand labels "substantive" and "procedural." Because *Richardson* involves interpretation of a criminal statute—with the Supreme Court deciding whether the phrase "series of violations" refers to one element or several elements—it might seem that the new rule must be "substantive." After all, the Supreme Court has said that because *Teague*'s anti-retroactivity principle "applies only to *procedural* rules[,] it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." *Bousley v. United States,* 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (emphasis added).

But *Bousley's* language must not be taken out of context. *Bousley* considered whether the Supreme Court's interpretation of the firearms statute in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), is retroactively applicable to criminal convictions that had become final. *Bailey* held that the word "use" in the statute requires more than mere possession; it requires the government to show "active employment of the firearm." 516 U.S. at 143, 116 S.Ct. 501 (emphasis omitted). *Bousley* characterized the *Bailey* rule as substantive and, therefore, not *Teague*-barred. The reason for the conclusion, however, is not only that "[the] Court [was] decid[ing] the meaning of a criminal statute enacted by Congress." *Bousley,* 523 U.S. at 620, 118 S.Ct. 1604. Much more importantly, it's because the Court's "holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, necessarily carr[ies] a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Id.* (internal quotation marks and citation omitted). "Accordingly," the Court held, "it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on . . . *Bailey* in support of his claim that his guilty plea was constitutionally invalid." *Id.* at 621, 118 S.Ct. 1604.

Hence, "substantive" in this context means the new rule places certain real-life conduct beyond the power of the criminal law—either because the statute, properly interpreted, doesn't reach it, or because constitutional constraints do not allow the state to prohibit it. *See id.* at 620, 118 S.Ct. 1604; *Teague v. Lane,* 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) ("[A] new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." (internal quotation marks omitted)); *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part, dissenting in part) ("New 'substantive due process' rules, that is, those that place, as a matter of constitutional interpretation, certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, must, in my view, be placed on a different footing." (footnote omitted)).

The other cases cited by the majority are to the same effect: The new rules were held to be substantive and retroactive because the conduct could not be proscribed under a correct interpretation of the statute. *See McNally v. United States,* 483 U.S. 350, 356–60, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (narrowing the federal mail fraud statute to protect only property rights); *United States v. Bordallo,* 857 F.2d 519, 524 (9th Cir.1988) (holding that the bribery statute does not ex-

tend to conduct in Guam); *United States v. Aguon*, 851 F.2d 1158 (9th Cir.1988) (en banc) (holding that inducement is an essential element of the extortion statute).

In contrast to these cases, *Richardson* does not place any previously illegal conduct beyond the reach of the state's penal authority. Before and after *Richardson*, a person could be convicted of CCE if he committed at least three drug felonies, if he supervised at least five individuals and if he derived substantial income from his illegal activities. The only difference post-*Richardson* is how the jury goes about performing its functions: They may convict only if all twelve members unanimously agree on three specific predicate felonies that make up the "continuing series." Because this affects conduct in the courthouse and not in the world at large, it is a matter of procedure.

Were we writing on a blank slate, we might be able to call even this type of change in the law "substantive." But the slate is not clean. Recently, in *United States v. Sanchez–Cervantes*, 282 F.3d 664, 668 (9th Cir.2002), we held that the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt), was procedural. We arrived at this conclusion even though every application of the constitutional rule requires distinguishing between the statute's "elements" and "sentencing factors," and even though it's almost certain, as a simple matter of mathematical probability, that some defendants would not have been convicted had the statutory elements been submitted to a jury of twelve, instead of decided by a judge alone. There may well be a plausible argument that, because *Apprendi* narrows the class of persons who is likely to

be convicted, the rule is substantive. But we have already rejected this argument. Instead, we characterized the rule as procedural because *Apprendi* affects only the identity of the decisionmaker and the burden of proof, but does not place conspiracies beyond the reach of the drug laws. *See also McCoy v. United States*, 266 F.3d 1245, 1256–57 (11th Cir.2001) (holding that because *Apprendi* does not place drug conspiracies beyond the scope of the state's authority to proscribe, *Teague's* exception for substantive rules does not apply); *United States v. Moss*, 252 F.3d 993, 997 n. 3 (8th Cir.2001) (same); *United States v. Sanders*, 247 F.3d 139, 148 (4th Cir.2001); *cf. Bilzerian v. United States*, 127 F.3d 237, 241 (2d Cir.1997) (holding that claims based on *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which requires the materiality element in the federal false statement statute be decided by the jury, are *Teague*-barred); *United States v. Shunk*, 113 F.3d 31, 35 (5th Cir.1997) (same); *United States v. Swindall*, 107 F.3d 831, 835 (11th Cir. 1997) (same).

Our cases on standards of proof point to the same conclusion. Altering the standard of proof is almost certain to change the outcome in at least some cases. But questions about standards of proof have long been recognized as procedural, not substantive, across a broad range of legal fields. *See, e.g., In re Winship*, 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Chow v. INS*, 641 F.2d 1384, 1391 n. 4 (9th Cir.1981). This is so even if the standard is derived from an interpretation of a statute or, in *Bousley's* words, when the "Court decides the meaning of a . . . statute enacted by Congress." *Bousley*, 523 U.S. at 620, 118 S.Ct. 1604; *see, e.g., Melton v. Moore*, 964 F.2d 880, 882 (9th Cir.1992) (holding that a Supreme Court decision that changed the standard of proof from "clear and convincing" to "pre-

ponderance of the evidence" under 11 U.S.C. § 523(a) "did not establish a new evidentiary or substantive rule of law; however, it announced a procedural change").

Hence, the mere fact that *Richardson* involves an interpretation of a statute and that convictions would henceforth be more difficult to obtain does not make the new rule substantive. The dispositive question is whether the decision places certain previously illegal conduct beyond the reach of the criminal law in effect. Because the answer is clearly no, *Teague* applies, and Montalvo's *Richardson* claim cannot be asserted on habeas.