[No. D007546. Fourth Dist., Div. One. July 21, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES GEORGE POMPA, Defendant and Appellant.

**COUNSEL**

Eugene G. Iredale for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Rudolf Corona, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BENKE, J.**—Following denial of a motion to suppress evidence and dismiss the information (Pen. Code,[1] §§ 1538.5 & 995), the court found Charles George Pompa guilty of possessing cocaine for sale (Health & Saf. Code, § 11351). The court suspended imposition of sentence and placed him on three years' probation, including a condition he serve one hundred eighty days in custody. Pompa appeals.

At approximately 5:15 p.m. on April 24, 1987, San Diego Police Officer Jerome Van Wey entered Pompa and Sons Upholstery with a search warrant. Before entering, the officers saw an "Open for Business" sign in the window. Upon entering, they saw Pompa seated in a large room talking with two others. Van Wey advised Pompa of the officers' purpose and gave him the warrant. While they conversed, other officers went through other portions of the building to ensure their safety. Inside an office one of the officers saw a sawed-off shotgun lying on the desk. The officer called Van Wey and pointed out the gun. Further search of the office disclosed 65 pounds of marijuana and paraphernalia. The officers saw a safe and requested the combination from Pompa. Van Wey advised him if he did not disclose the combination, he would call a locksmith to open the safe. Pompa gave Van Wey the combination. Inside the safe, the officers found Pompa's

---

[1] All statutory references are to the Penal Code.

will, his business records, $17,000, and cocaine. The officers arrested Pompa.

After denial of a motion to suppress evidence (§ 1538.5) and exclude evidence he had given the officers the combination to the safe, Pompa waived his right to a jury and entered a slow plea to possession of a controlled substance for sale in order to obtain review of the *Miranda* [*Miranda v. Arizona* (1966) 384 U.S. 436 (16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974)] issue raised in the motion to exclude. At the conclusion of the court trial, the prosecution dismissed charges Pompa possessed a sawed-off shotgun (§ 12020, subd. (a)), possessed marijuana for sale (Health & Saf. Code, § 11359), and possessed cocaine (Health & Saf. Code, § 11350, subd. (a)).

Pompa contends the trial court erred in denying his motion to suppress and his motion to exclude his disclosure of the combination to the safe.

## I

■ Pompa argues the trial court erred in denying his motion to suppress the contraband discovered in the business office because an officer entered that room without first knocking and providing notice of his identity and purpose.

Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

Pompa argues in applying section 1531, the door to an inner office in a business is treated as the inner door of a house.

Initially we note Pompa was not inside the office when the officers entered it. In fact, he was with the officers outside the door. To the extent he is asserting an illegal entry based upon the privacy interest of others who may have an interest in the office, he has no standing. (*Rawlings* v. *Kentucky* (1980) 448 U.S. 98 [65 L.Ed.2d 633, 100 S.Ct. 2556]; *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421].)

Even if Pompa were to have standing in this case, there was no violation of section 1531. Section 1531 does not require that officers armed with a search warrant make the prescribed announcements in connection with their entry to each and every room within a structure. As was stated in *People* v. *Livermore* (1973) 30 Cal.App.3d 1073, 1077 [106 Cal.Rptr. 822]: "While special circumstances may, in some cases, require compliance with section 1531 prior to breaking an inner door, the most reasonable interpretation of that section [1531] is that the 'notice of authority and purpose'

requirement is directed to the initial entry of the structure to which the warrant is directed." (Fn. omitted.)

*Livermore* involved the search of a residence. ■ Here, the entry was to an office which was part of a business establishment, premises entitled to a lesser expectation of privacy under the Fourth Amendment than that protection afforded a home. (*People* v. *Lee* (1986) 186 Cal.App.3d 743, 750 [231 Cal.Rptr. 45]; *United States* v. *Agrusa* (8th Cir. 1976) 541 F.2d 690, 700; *United States* v. *Clayborne* (10th Cir. 1978) 584 F.2d 346.) Thus to the extent the knock-notice rule applies to business premises, it has less force than when applied to dwellings. ■ If as the *Livermore* court holds the knock-notice rules do not require the officers knock and announce their authority at every place of entry inside a dwelling house during the execution of a search warrant, it follows the officers in this case were not required to knock and announce their authority before entering into every inner room on the business premises—particularly where, as here, prior to the entry into the business the officers had identified the proprietor of the business, had informed him of their authority and purpose for being on the premises, and had read the contents of the search warrant to him. There was no need to comply with knock and notice requirement outside the business office.

## II

■ Pompa also contends the trial court erred in denying his motion to exclude his disclosure to Officer Van Wey of the combination to the safe and evidence he opened the safe at the officers' request. He argues when he revealed the combination, he was in custody and the request for the combination was an interrogation. Similarly, he asserts when he opened the safe for the officers his action was testimonial.

■ Absent advisement of the right to remain silent, testimonial evidence obtained from a suspect during an interrogation after he or she is in custody must be excluded from evidence. (*Miranda* v. *Arizona, supra,* 384 U.S. 436.) ■ The issue before this court is not whether Pompa was in custody when he made the statement but whether he made it during an interrogation.

■ In *Rhode Island* v. *Innis* (1980) 446 U.S. 291 [64 L.Ed.2d 297, 100 S.Ct. 1682], the Supreme Court held: "[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody), that the police should know are reasonably likely to elicit an*

*incriminating response from the suspect.* The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (*Rhode Island* v. *Innis, supra,* 446 U.S. at pp. 300-302 [64 L.Ed.2d at pp. 307-308], fns. omitted, first italics added.)

Pompa argues the police knew or should have known his response to the request for the combination and the request to open the safe would be incriminating since it would reveal he possessed the combination of the safe in which contraband might be found. Even assuming the trial court should have limited the admissibility of the statement to preclude its use to show possession of the combination,[2] any error was harmless. Found with the contraband in the safe in Pompa's office were his personal will and his business records. No reasonable doubt could exist whether he possessed the contraband. (See *Chapman* v. *California* (1967) 386 U.S. 18, 23 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Since the only relevance of his knowledge of the combination goes to whether he possessed the contraband found in the safe, failure to exclude the statement of the combination and the request to open the safe was harmless.

The judgment is affirmed. Appellant is ordered to appear and surrender on the bond.

Todd, Acting P. J., and Huffman, J., concurred.

---

[2] We note in arguing on this point, Pompa relies upon *People* v. *Rucker* (1980) 26 Cal.3d 368 [162 Cal.Rptr. 13, 605 P.2d 843]. He contends the request for the combination sought a testimonial statement and although the officer's purpose in asking the question may have been to obtain a nontestimonial response, a response which might be incriminating should not be admitted at trial. At least one appellate court has held the portion of *Rucker* concerned with in the latter argument did not survive Proposition 8. (*People* v. *Hall* (1988) 199 Cal.App.3d 914, 920 [245 Cal.Rptr. 458].)