[No. F011820. Fifth Dist. Sept. 27, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
LISA LYNNE BERRY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, and III.A.

164

**COUNSEL**

Scott F. Kauffman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, J. Robert Jibson and Karen L. Ziskind, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THAXTER, J.**—Appellant Lisa Lynne Berry was convicted by a jury on one count of possession of methamphetamine for sale, a violation of Health and Safety Code section 11378. She raises only one issue on appeal, claiming her trial counsel was ineffective because of his failure to move for suppression of the fruits of Berry's un-*Mirandized*[1] statement after successfully excluding the statement itself. We will hold that the challenged evidence was admissible under the inevitable discovery doctrine; thus, a suppression motion would have been futile so the failure to move was not ineffective assistance of counsel. Accordingly, we will affirm.

FACTS

On November 1, 1988, at approximately 11:30 p.m., Kern County Sheriff's deputies executed a search warrant at 2554 Desert Street in

---

[1] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Rosamond. A significant quantity of controlled substances was found in the residence. The house had been rented by Berry's mother, Rebecca Durham, for years. Durham, however, claimed at trial she no longer lived there but merely stored extra belongings and her collection of poisonous snakes in the house. Rusty Ness was a tenant of Durham's. He slept in the northeast bedroom of the house. He did not have access to the northwest bedroom.

Berry had been living with her grandparents in Lancaster, but because they were planning to move to Tehachapi, she decided to move to the Desert Street house. On October 31, 1988, she moved part of her belongings to Rosamond. Berry had a key to the house. On the night of the search, Ness and Berry were present at the house. Durham was not. Berry's three-year-old daughter was also present, asleep in the southeast bedroom.

When officers arrived, Ness opened the door. Berry was in the hallway adjacent to the bathroom. Officer Perez showed Berry the search warrant which authorized search of the residence for drugs and contraband. Durham was named in the warrant, Ness and Berry were not. Berry told Perez there were poisonous snakes in the house and one was unaccounted for which she believed to be in a pillowcase somewhere in the house. Without giving a *Miranda* warning to Berry, Perez asked Berry to tell him where the drugs were located to "make it easier" and "for officer safety." Berry then told Perez he would find drugs in her black purse which was in the northwest bedroom.

With this information, Perez went to the northwest bedroom and looked inside the purse. There he found a small vial of methamphetamine, some marijuana, a ziplock baggie containing 3.47 grams of methamphetamine, and Berry's identification. In the same bedroom were a number of cages, most of them occupied by snakes. The officers found a large quantity of methamphetamine and other drug paraphernalia in the bedroom. Some of the contraband was found in the snake cages. A large amount of currency was also found. Berry was not free to leave when questioned by Perez or at any other time during the search.

After Perez found the drugs in Berry's purse, she was given her *Miranda* rights, which Berry waived. Her purse was inventoried in front of her. She told Perez the drugs inside the purse belonged to Martin Perez. When she was asked what she was doing with the drugs, she replied she did not know.

The search warrant was based in part on information provided to the officers by Gary Sarmento. Sarmento had been hired by Durham to care for her snakes and had a key to the northwest bedroom which was normally kept locked. It was not locked when officers arrived. Sarmento visited the

residence earlier on November 1, 1988. He arrived at about 8:15 p.m. and stayed at the house for 30 minutes. He told officers he purchased methamphetamine from Berry on that occasion and had dealt with Durham on approximately 24 prior occasions.

Berry claims her purse was sitting in the living room while Sarmento was there. After Sarmento left, Berry took her purse and went into the northwest bedroom to sleep. At trial, Berry denied knowledge of the drugs in her purse.

Before trial Berry moved to exclude her un-*Mirandized* statement to Officer Perez. The motion was granted. No further motions regarding the admissibility of evidence seized in the search, including the evidence seized as a result of the un-*Mirandized* statement, were made. That evidence was admitted at trial without objection.

## DISCUSSION

■■■ Berry claims she received constitutionally defective legal representation at trial. She contends counsel's failure to move to suppress "fruits" of the illegally elicited statement to Perez cannot be justified or explained as a tactical decision. She argues the evidence and testimony tying her to the residence and the contraband are fruits of the initial seizure of the purse. She anticipated and attempts to rebut respondent's argument that the evidence was admissible because it would have been discovered inevitably. Respondent argues counsel was not ineffective because a motion to suppress the evidence would have been meritless—the search warrant authorized a search of the purse irrespective of Berry's statement.

I.-III.A.*

B.  *The Search Warrant Authorized a Search of the Purse*

■■■ Application of the inevitable discovery rule here rests on respondent's claim that the warrant authorized a search of Berry's purse. Berry disputes that claim arguing that neither her person nor her effects were subject to search pursuant to the warrant. She argues that "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person," citing *Ybarra* v. *Illinois* (1979) 444 U.S. 85, 91 [62 L.Ed.2d 238, 245-246, 100 S.Ct. 338]. She also cites *People* v. *McCabe* (1983) 144 Cal.App.3d 827 [192 Cal.Rptr. 635].

---

*See footnote, *ante,* page 162.

These cases are of no assistance however because Berry was not a "mere visitor" to the residence.

In *Ybarra*, the Supreme Court ruled a search warrant authorizing search of a tavern did not authorize a personal search of the patrons present when the warrant was executed, irrespective of their relationship to the premises or the suspected criminal activity. The court noted the Fourth Amendment protected persons wherever they happen to be, and mere presence at the tavern, without more, did not supply the probable cause needed to search the patrons. *Ybarra* is not applicable to the facts here. The officers did not search Berry's person prior to her arrest. Nor was she merely a patron in a public place without ties to the suspected criminal activity. In contrast, Berry was living at a residence where unlawful activity was suspected, and her name had been linked to the unlawful activity by Sarmento.

The *McCabe* court held a warrant for a residential search does not alone authorize search of the personal effects of a visitor to the residence. It also held officers may ordinarily assume the personal effects found on the premises belong to the residents absent actual knowledge to the contrary. (*People v. McCabe, supra,* 144 Cal.App.3d at pp. 830-831.) However, the decision does not discuss the underlying rationale for the rule nor does it define the distinction between a "visitor" and a "resident."

Berry's reliance on *McCabe* suggests she places herself in a category other than resident, although she stops short of contending she was a "mere visitor." She does argue the officers had no information linking her to the suspected illegal activities which persuaded the magistrate to issue the search warrant. She implies the search of her purse lacked probable cause. Her contention is without merit.

During a residential search authorized by warrant, officers may lawfully search all of the residents' personal effects which are plausible repositories of the contraband described in the warrant. (*People v. McCabe, supra,* 144 Cal.App.3d at p. 830, citing *People v. Saam* (1980) 106 Cal.App.3d 789, 794 [165 Cal.Rptr. 256]. See also *People v. Kibblewhite* (1986) 178 Cal.App.3d 783, 785 [224 Cal.Rptr. 48], citing *United States v. Ross* (1982) 456 U.S. 798, 820-821 [72 L.Ed.2d 572, 590-591, 102 S.Ct. 2157], and *Skelton v. Superior Court* (1969) 1 Cal.3d 144, 158 [81 Cal.Rptr. 613, 460 P.2d 485]; in accord *United States v. Gomez-Soto* (9th Cir. 1984) 723 F.2d 649, 654; *U.S. v. Gray* (1st Cir. 1987) 814 F.2d 49, 51; *U.S. v. Giwa* (5th Cir. 1987) 831 F.2d 538, 543-544.)

The rationale for this rule recognizes the protections afforded by the warrant requirement. A neutral magistrate has already determined probable

cause supports searching the residence for which the warrant has issued. Connection to and control over the residence is an identifiable and sufficient link to the criminal activities to justify the intrusion of a search of personal effects located within the premises. (See *Michigan* v. *Summers* (1981) 452 U.S. 692, 704-705 [69 L.Ed.2d 340, 350-351, 101 S.Ct. 2587]; *United States* v. *Micheli* (1st Cir. 1973) 487 F.2d 429, 431-432.)

We know of no case clearly defining the exact nature of the relationship needed to justify the search of one's personal effects. Most cases distinguish between a resident of the premises and a casual or "mere visitor." As the facts of this case demonstrate, however, a person may be less than an actual resident but far more than a mere visitor. Should the personal effects of such a person be subject to search pursuant to a premises search warrant? We think the answer can be found by examining the relationship between the person and the place (*United States* v. *Micheli, supra,* 487 F.2d at pp. 431-432) and what the executing officers could reasonably infer about that relationship, based on appearances (*U.S.* v. *Giwa, supra,* 831 F.2d 583, 543-544; *U.S.* v. *Gray, supra,* 814 F.2d 49).

In *Micheli* the court held the defendant, a co-owner of the business for which the search warrant was issued, was "not in the position of a mere visitor or passerby . . . . He had a special relation to the place, which meant that it could reasonably be expected that some of his personal belongings would be there." (487 F.2d at p. 432.)

In *U.S.* v. *Gray, supra,* 814 F.2d 49, officers were executing a search warrant at 3:45 a.m. on a residence immediately after participating in a cocaine purchase outside the house. Inside they found Gray and another man hiding. Neither was named in the warrant. A jacket draped over a chair in another room was searched, revealing a baggie containing cocaine and documentary evidence suggesting the jacket belonged to Gray. The court found there were sufficient indicia that Gray was more than a casual visitor to permit the officers to conduct the search.

"The defendant was not, say, a casual afternoon visitor to the premises. To the contrary, he was discovered in a private residence, outside of which a drug deal had just 'gone down,' at the unusual hour of 3:45 a.m. The officers had reason to think, based on overheard conversations, that [the drug-dealing resident] was not operating freelance. Given the entire array of facts and the plausible inferences therefrom, the appellant could warrantably have been believed to be harboring contraband." (814 F.2d at p. 51.) Although Gray's actual relationship to the premises was unknown to the executing officers, circumstances suggested a more than casual connection between

Gray and the place being searched, justifying the search of his personal effects found on the premises.

A similar result was reached in *U.S.* v. *Giwa, supra,* 831 F.2d 538. There, officers executing a premises search warrant found Giwa wearing only a bathrobe and slacks. Although Giwa roughly matched the description of the man who lived at the residence, he was in fact an overnight guest. The court nonetheless upheld a search of his flight bag found in the closet.

"[W]e do not agree with the district court's finding that Giwa was merely a 'casual visitor' to the apartment. Giwa was an overnight visitor to Aruya's apartment. Additionally, at the time the agents arrived at the apartment, Giwa had been sleeping and answered the door clad only in a bathrobe and slacks, apparel indicating that his was more than just a temporary presence in the apartment. Finally, Giwa was discovered alone in a private residence. These facts support the conclusion that Giwa was not a 'mere visitor' or 'passerby' and thus, the agents could reasonably believe his flight bag contained evidence of credit card fraud." (831 F.2d at p. 545.)

The rule we glean from these decisions is that if the circumstances apparent to the executing officers show indicia of only a casual, temporary presence at the place being searched, the person is a "mere visitor" whose property cannot be searched solely because it happens to be temporarily located on premises named in the warrant. If the circumstances suggest a relationship between the person and place sufficient to connect the individual to the illegal activities giving rise to the warrant, search of the person's property on the premises is permitted.

On the undisputed facts in this case, Berry was clearly more than a mere visitor to the residence. She was the daughter of the woman who rented the house named in the warrant. She had grown up in the house and had a key. She was present in the house at a late hour with her young daughter and an adult male. Her daughter was sleeping at the house. Some of Berry's belongings were there. She was moving into the house and intended the house to be her new residence. She slept there the day before the search and cooked there the day of the search. Based on information given by Sarmento, the officers knew Berry might be involved in illegal drug sales at the house. There was a sufficient connection between Berry and the house to allow a search, under authority of the warrant, of her personal effects—including the purse. (*U.S.* v. *Gray, supra,* 814 F.2d 49, 51.)

Because the search of Berry's purse was justified by the circumstances we have discussed, there is no need for us, or for the trial court on remand, to

determine whether Berry was a "resident" of the house at the time of search.

That the purse would have been searched during the execution of the warrant is not seriously contested by either party. The purse was found lying on a chair in the bedroom where much of the contraband was found. The officers conducted a thorough search of the bedroom and all plausible containers of contraband found there. It is highly unlikely the officers would not have searched the purse even if the pre-*Miranda* statements had not been elicited from Berry.

Having concluded the warrant granted authority to search the purse, application of the inevitable discovery rule purges any taint resulting from the unlawful police conduct. Application of the rule does not minimize the unlawfulness of the police conduct. The rule simply allows introduction of evidence which would have been inevitably discovered absent police misconduct. (*Nix* v. *Williams* (1984) 467 U.S. 431, 443, fn. 4 [81 L.Ed.2d 377, 104 S.Ct. 2501].) ▪ Because the evidence was thus admissible, any motion to have it suppressed would have been futile. Therefore, counsel was not ineffective when he failed to make the motion as Berry contends.

▪ For the same reasons, counsel's failure to exclude Berry's evasive responses to Officer Perez's questioning about the source and ownership of the narcotics found in the purse does not amount to constitutionally defective representation. The statements were made after Berry was *Mirandized* and waived her constitutional rights. Since we have concluded the purse would have been lawfully searched during execution of the warrant, the responses given by Berry when confronted with the narcotics were admissible under the inevitable discovery rule.

### DISPOSITION

The judgment is affirmed.

Stone (W. A.), Acting P. J., and Vartabedian, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 13, 1990.