[No. C012644. Third Dist. Sept. 27, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
RAYMOND HOWARD et al., Defendants and Respondents.

1546

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Appellant.

Gordon S. Brownell and John Doyle, under appointments by the Court of Appeal, for Defendants and Respondents.

OPINION

PUGLIA, P. J.— The People appeal from an order of the superior court denying their motion to reinstate a criminal complaint against defendants Raymond Howard and Tina Rose. (Pen. Code, §§ 871.5, 1238, subd. (a)(9).) The principal question on appeal is whether an officer who has complied with Penal Code section 1531 (§ 1531) before entering a house to execute a search warrant must again observe the requirements of that section before entering an inner room through a closed door. We shall hold that compliance with section 1531 before entering the house is sufficient and once inside, the officer is not again required to comply before entering a closed inner room.

Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

The decisions which have addressed the issue before us are in conflict. On one side are *People* v. *Livermore* (1973) 30 Cal.App.3d 1073 [106 Cal.Rptr. 822] and its progeny (*People* v. *Castenada* (1976) 58 Cal.App.3d 165 [129 Cal.Rptr. 755]; *People* v. *Pompa* (1989) 212 Cal.App.3d 1308 [261 Cal.Rptr. 417]), and cognate federal authority (e.g., *United States* v. *Crawford* (9th Cir. 1981) 657 F.2d 1041), which hold that absent special circumstances, the knock-notice requirements of section 1531 apply only to the entry into a house, and need not be repeated at inner doors once the officers have lawfully entered.[1] On the other side are *People* v. *Webb* (1973) 36 Cal.App.3d 460 [111 Cal.Rptr. 524] and its progeny (*People* v. *Glasspoole*

---

[1] We use the term "knock-notice" as an abridgement of the requirements of section 1531 and its federal counterpart, 18 United States Code section 3109, i.e., that the officer before entering give notice of his authority and purpose and be refused admittance either actually or constructively.

(1975) 48 Cal.App.3d 668 [121 Cal.Rptr. 736]; *People* v. *Pipitone* (1984) 152 Cal.App.3d 1112 [201 Cal.Rptr. 18]), which hold that compliance with knock-notice at an outer door does not excuse a reprise before "break[ing] open" a closed inner door.

The facts in this case are more closely analogous to those in *People* v. *Webb* but, as we shall explain, *Webb* misconstrues the language of section 1531, and its holding is inconsistent with that section's underlying rationale. We construe the language of section 1531 to require compliance therewith at the point of entry to a house, but not at inner doors. Moreover, as we shall explain, requiring knock-notice at inner doors frustrates the underlying purposes of section 1531. Accordingly, we shall reject *Webb* and follow the rationale of *People* v. *Livermore* and cognate federal authority.

The relevant facts, taken from the preliminary hearing, are undisputed. Deputy Sheriff Herbst and five other officers arrived at defendants' residence at approximately 9:30 a.m. to serve a search warrant. The officers wore jackets displaying the word "police" in five-inch letters on the side and back. Their badges were worn prominently on the front of the jackets.

The officers approached the residence from the front. Herbst observed a woman looking out a ground floor window next to the front door. Herbst yelled to her that he had a search warrant and directed her to open the door. The woman closed the window curtains. She did not open the door.

Herbst knocked loudly on the door and, in a voice described as a "yell," identified himself as a police officer with a search warrant and demanded the door be opened. Herbst repeated this procedure at least twice more.

Receiving no response, Herbst opened the unlocked front door and entered along with two other officers. The officers passed through the living room to a hallway. The first door off the hallway led to the room in which the woman had appeared in the window. Herbst directed one of his officers to detain her.

Herbst and another officer continued down the hallway to a bedroom. The door was closed. Herbst knocked on the door and stated, "Police, search warrant." Simultaneously he opened the door and entered. He observed defendants Howard and Rose in bed. A sawed-off rifle leaned against the wall within Howard's reach. Officers removed Howard and Rose from the room so that it could be searched. Rose's purse was on the floor near the mattress.

The officers found marijuana and drug sale paraphernalia in the room and methamphetamine, cash and a "pay-owe" sheet in Rose's purse. The officers

gave Rose a field sobriety test and concluded she was under the influence of stimulants.

Rose was charged with being under the influence of a controlled substance (Health & Saf. Code, § 11550) and both defendants were charged with possession for sale of marijuana and methamphetamine (Health & Saf. Code, §§ 11359, 11378) and possession of a deadly weapon (Pen. Code, § 12020, subd. (a).)

At the preliminary hearing defendants moved the magistrate to suppress the seized evidence, claiming the officers did not comply with knock-notice before they entered the bedroom, specifically, that the officers entered without giving defendants an opportunity to respond to their announcement. Rose also claimed the search of her purse was unlawful.

The magistrate found the officers knocked at the outer door of the house and "waited the appropriate time before [they] entered"; the officers also knocked and announced at the bedroom door but "did not wait [for a refusal] before [they] entered" and there were no exigent circumstances shown that would excuse what the magistrate believed was a failure to comply with section 1531 before entering the bedroom. The magistrate therefore suppressed all the evidence seized in the bedroom. The evidence having been suppressed, the magistrate dismissed the complaint.

The People moved in superior court to reinstate the complaint, asserting (1) Rose lacked standing to challenge the search warrant, (2) the officers complied with knock-notice, and (3) the search of the purse was proper.[2] The matter was submitted on the preliminary hearing transcript and written points and authorities. The superior court denied the motion, concluding: "[The magistrate] made certain findings to the effect that the law enforcement officers did not comply with the 'knock-notice' requirement of Penal Code section 1531, and further that there was no showing of exigent circumstances which would excuse the noncompliance. The findings of the Magistrate were supported by substantial evidence."

This appeal by the People followed.

In *People* v. *Livermore, supra,* officers arrived at defendants' house to serve a search warrant. They knocked, identified themselves, announced their purpose at an open front door, and were invited inside. One officer then proceeded down the hall to an open bedroom door. The officer entered and, as he did so, announced "[p]olice officer." Defendant was in bed. The trial

---

[2] On appeal, the People have abandoned their earlier contention Rose lacked standing to challenge the search and seizure.

court denied a motion to suppress based on an alleged section 1531 violation, concluding that because the officers complied with section 1531 at the front door, they were not required to repeat those procedures at each and every threshold inside the house. (30 Cal.App.3d at pp. 1075-1076.)

The *Livermore* court affirmed. Observing that notice is not required to be given every occupant in the house (30 Cal.App.3d at p. 1077, citing *Beckers* v. *Superior Court* (1970) 9 Cal.App.3d 953, 960 [88 Cal.Rptr. 602]), the court held: "[N]or does [section 1531] require that officers, armed with a warrant to search a structure, make the prescribed announcements in connection with their entry into each room or subarea thereof." (30 Cal.App.3d at p. 1077.) The court noted an exception to this rule where the warrant directed search of "only one room inside a structure or several unconnected units within a large building." (30 Cal.App.3d at p. 1077, fn. 3.)

In *People* v. *Webb, supra,* officers complied with section 1531 before entering a house to execute a search warrant. (36 Cal.App.3d at p. 464.) Once inside, an officer approached a closed bedroom door and knocked but did not announce his authority or purpose or demand entry. When there was no response to a second knock, the officer opened the door. Defendant was inside on the bed. A search of the room revealed illegal narcotics and a loaded .25-caliber automatic pistol. (*Id.,* at pp. 464-465.)

On appeal, the *Webb* court held the evidence taken in the bedroom was illegally seized and should have been suppressed: "Section 1531 of the Penal Code was not complied with. This section refers to 'any outer or *inner* door' [italics original] and plainly was applicable to the bedroom door. Respondent states that section 1531 does not require an officer to knock on every door, state his identity and intentions, and wait for a response. Under certain circumstances, this is so. In *People* v. *Livermore . . .* the officers entered the home in full compliance with section 1531. Thereafter, one of the officers walked into a bedroom, the door to which was open, and announced himself as a police officer as he entered. This was held to be substantial compliance. There was not present the peril which is produced by unproclaimed intrusion. But the case does not justify the conclusion that section 1531 does not apply to inner doors. The opinion does not say so, and we deem it cannot because of the explicit terms of section 1531." (*Webb, supra,* 36 Cal.App.3d at p. 465.) Thus the *Webb* court distinguished *Livermore* on the basis the inner bedroom door was open.

If the *Webb* court is correct in its interpretation of "the explicit terms" of section 1531, then as a matter of consistent grammatical construction knock-notice must precede not only the "break[ing] open" of "any outer or inner

door or windows of a house" but also the "breaking open" of "any part of a house" as well as "anything therein." "[A]ny part of a house" would include closets, crawl spaces, a furnace, etc. "[A]nything therein" would include *everything* therein which one could "break open" such as wardrobes, chests of drawers, cupboards, sideboards, bathroom and kitchen drawers, refrigerators, ovens, dishwashers, microwaves, washers, dryers, covered book cases, trunks, suitcases, safes, jewelry boxes, just plain boxes, items (such as television sets) which one must "break open" to locate the serial numbers, etc., etc., etc.

Obviously, section 1531 is not an exemplar of perfect draftsmanship. For example, the words "anything therein" are not expressly limited to those things large enough to conceal a person capable of assimilating and responding to a demand for admittance, e.g., a large steamer trunk. They apply inclusively to "anything therein." Thus, if knock-notice literally applies to "anything therein," an officer executing a search warrant for narcotics would have to observe knock-notice before opening a small pill box. Numerous other examples, equally absurd, may easily be conjured up by even the most inert imaginations. Given that we are enjoined in construing statutes to avoid absurd consequences (*Stanley* v. *Justice Court* (1976) 55 Cal.App.3d 244, 253 [127 Cal.Rptr. 532]), we believe it is more reasonable to construe section 1531's demand for knock-notice before "break[ing] open" as applying to the house itself and not its subareas and contents.

In our view the *Webb* court simply misread section 1531 which, despite its cumbersome grammatical structure is susceptible to a reasonable interpretation. Thus, the last clause of section 1531, i.e., "if, after notice of his authority and purpose, he is refused admittance," refers to "admittance" only to the house itself and not to pill boxes and other things "therein" or even to "part[s] of a house." Thus notice of authority and purpose, i.e., knock-notice, is required to gain admittance to a house, and once complied with, any part of the house or anything therein may be broken open as required to execute the warrant. So also may an outer access way be broken open to gain admittance after refusal of entry.[3]

A construction of section 1531 requiring knock-notice only at the point of entry to a house subserves the policy of the statute. Conversely, the rule announced in *Webb* does not subserve that policy, indeed, in some instances,

---

[3]"Often executing officers will find it necessary to enter more than one door—interior or exterior, open or closed—to properly execute a search warrant. Lower courts have typically held that it is *not* necessary for executing officers to knock and announce at every door where entry is sought, *as long as* proper notice has been given (or is being given simultaneously) at an outside door to an interior living area." (Burkoff, Search Warrant Law Deskbook (May 1993) Entry to Execute Warrant, § 12.3, p. 12-6, fn. omitted, italics in original.)

it frustrates it. The purposes underlying section 1531 include protection of the privacy of the individual in his home and that of others who may be there and the protection of the police and other innocent people by preventing violent confrontations likely to be caused by precipitous police entry. (*People* v. *Macioce* (1987) 197 Cal.App.3d 262, 271 [242 Cal.Rptr. 771].)

Similar purposes underlie the federal knock-notice provision, 18 United States Code section 3109 (hereafter § 3109). (See *United States* v. *Bustamante-Gamez* (9th Cir. 1973) 488 F.2d 4, 9; see also *People* v. *Tacy* (1987) 195 Cal.App.3d 1402, 1412-1413 [241 Cal.Rptr. 400] [citing as persuasive federal cases interpreting § 3109].) In language virtually identical to section 1531, the cognate federal statue, section 3109, provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant."[4]

A rule which requires officers who have complied with knock-notice at an outer door to repeat those procedures at each inner door does not protect any cognizable privacy right of the occupants. At the point of entry, knock-notice clearly protects the homeowner from the outrage of having "his 'castle' suddenly and violently broken into." (*United States* v. *Bustamante-Gamez, supra*, 488 F.2d at pp. 11-12.) And, properly understood, it promotes "the reverence of the law for the individual's right of privacy in his own house" (*Miller* v. *United States* (1958) 357 U.S. 301, 313 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190], fn. omitted). The extent to which it serves this purpose, however, is subject to debate. "It is at least clear that the rule does not, as one commentator has claimed, 'secure to an individual the feeling of control over his own dwelling, upholding the dignity of the citizen against the state.' [Citation.] The simple fact is that a homeowner has no right to prevent officers armed with a warrant or proper grounds to make a warrant-less entry from entering his home. At the most, the 'refusal of admittance' requirement gives him a few moments to decide whether or not he will open the door himself." (*United States* v. *Bustamante-Gamez, supra*, 488 F.2d at p. 12, cited in *People* v. *Tacy, supra*, 195 Cal.App.3d at p. 1421; see *People* v. *Jacobs* (1987) 43 Cal.3d 472, 486 [233 Cal.Rptr. 323, 729 P.2d 757], dis. opn., Mosk, J.) "[L]ittle if anything is gained by permitting the occupant to open the door to an entry that he cannot legally resist." (*United States* v. *Bustamante-Gamez, supra*, 488 F.2d at p. 12.)

In any event, to the extent a privacy interest remains to be protected, it is clearly vindicated by the requirement of knock-notice at the point of entry.

---

[4]Penal Code section 1532 provides that the officer "may break open any outer or inner door or window of a house, for the purpose of liberating a person who, having entered to aid him in the execution of the warrant, is detained therein, or when necessary for his own liberation."

Once the officers have so complied, they are entitled forcibly to break into the dwelling if refused entry. At that point, the sanctity of the "castle" has been breached irreversibly and whatever residual privacy right survives the search warrant up until the time of lawful entry simply ceases to exist.[5] The rule of *People* v. *Webb, supra,* would revive an extinguished right.

Compliance with knock-notice at an exterior door affords those within a house subject to a search warrant all the privacy protection to which they are entitled. In *People* v. *Crawford, supra,* 657 F.2d at page 1045, officers with a search warrant complied with knock-notice at the front door but not at a closed interior bedroom door. The reviewing court rejected defendant's claim that failure to observe knock-notice at the bedroom door violated the respect accorded for individual privacy: "In light of the sufficiency of the notice provided at the front door, [defendant's] privacy interests were not infringed upon."

A second purpose underlying section 1531 is the prevention of violent confrontation. Section 1531 itself strikes the balance between the need for effective law enforcement and the prevention of violence by requiring officers before they enter a home to execute a search warrant to comply with knock-notice. However, once there has been compliance and the officers enter, either peacefully or forcibly, the risk of violence is increased if the officers must again observe knock-notice at each inner door.

"To the extent that the rule prevents violence, its utility is exhausted when the actual announcement is made. The concern here is that an unannounced intrusion will provoke citizens to exercise their general right to repel intruders by force. [Citations.] However, few persons carry weapons about with them when they are at home. Thus, if announcement is made simultaneously with or shortly before entry it is unlikely that a law-abiding citizen would respond violently or provoke violence on the part of the officers. Indeed, if an occupant is predisposed to resist an entry by police, a substantial delay between announcement and entry could only give him time to prepare." (*United States* v. *Bustamante-Gamez, supra,* 488 F.2d at pp. 10-11.)

The instant facts, hardly uncommon to situations of this genre, illustrate the problem. Having complied with knock-notice at the front door, and alerted the occupants to their presence and purpose, the officers opened a

---

[5]An additional privacy interest served by section 1531 is to prevent embarassing circumstances "resulting from the unexpected exposure of private activities. [Citation.] Requiring officers to wait following the announcement may well permit some persons to put their affairs in order." (*United States* v. *Bustamante-Gamez, supra,* 488 F.2d at p. 12.) However, knock-notice does "not prevent the interruption of intimate activities, and the protection afforded is rather small." (*Ibid.*)

closed bedroom door without the benefit of knock-notice. A rifle was in reach of defendants inside the room. Had knock-notice again been observed, alerting defendants to the officer's imminent entry to that particular room, the resulting delay would have enabled defendants more easily to use the weapon if they were disposed to do so. Whether or not they were so disposed, the fact is the officers' simultaneous entry limited any such opportunity. Although it is speculative on this record to impute to defendants a willingness to do violence, it can reasonably be projected that in the generality of such cases, knock-notice at inner doors after the occupants have already been alerted to the police presence by knock-notice at the point of entry, would increase the probability of violence.

In interpreting an ambiguous statute, a purpose of which is to reduce the probability of violent confrontation, we should shrink from adopting a construction which will increase rather than reduce that probability. Requiring police who have lawfully entered a house to announce, demand entry and await refusal at each inner door is in conflict with the statutory purpose of reducing violence.

In light of the foregoing, it is not surprising that federal decisions are consistent with this analysis. Thus in *United States* v. *Bustamante-Gamez, supra,* the announcement of authority and purpose at the front door was simultaneous to the opening and entry of a garage door by another officer. Defendants' challenge to the search of the garage as being in violation of the federal knock-notice statute was rejected: "[T]he most rational explanation . . . . is that officers are not required to announce at *every* place of entry; one proper announcement under section 3109 is sufficient. There may be instances in which the officers' choice of place to announce is so clearly unreasonable that a second announcement is required at the actual point of entry, but this is not such a case. Here, the announcement was given at the front door of the house, and in the vast majority of cases this will be reasonable." (488 F.2d at p. 10, fn. omitted; italics in original.)

Directly on point is *United States* v. *Crawford, supra,* 657 F.2d 1041. There, secret service agents obtained a federal arrest warrant authorizing the arrest of Crawford at his place of residence. The officers arrived at Crawford's residence, knocked on the front door and identified themselves and their purpose. When no response was forthcoming, the officers broke down the door and entered the house. A .22-caliber rifle was discovered leaning against the stairwell. The officers without knocking and announcing their authority and purpose then opened a closed but unlocked bedroom door, finding Crawford and a female in bed. Crawford was arrested.

On appeal, the question presented was whether the officers' failure to knock, announce and wait for refusal at the closed bedroom door violated the

provisions of section 3109. Said the *Crawford* court: "There are no decisions directly on point dealing with appellant's assertion that, after having complied with the dictates of § 3109 at the front door, the arresting officers were then required to comply with § 3109 at the inner bedroom door. The Ninth Circuit has consistently held that where the first or contemporaneous entry is lawful under § 3109, a defendant cannot complain of the unlawfulness of subsequent entries. [Citations.] . . . .

"Appellant contends that a failure to enforce the notice requirement for the inner door in this case would contravene the purposes of § 3109 which include: reduction of the potential for violence; prevention of needless destruction of private property; and respect for individual privacy. [Citation.]

"We conclude that these purposes were preserved. Appellant had adequate notice at the front door because that notice was loudly given with a proper interval of time observed before the breaking open of the door. Additionally, there was no needless destruction of property since the bedroom door was not forced open in a physical sense. In light of the sufficiency of the notice provided at the front door, appellant's privacy interests were not infringed upon. Furthermore, appellant's privacy interests must be weighed against the state's interest in securing the safety of its agents and citizens." (657 F.2d at pp. 1044-1045, fns. omitted.)

"[W]hile the aforementioned decisions deal with the lawfulness of exterior door entries contemporaneous or subsequent to lawful entries, the logic and holdings should extend to subsequent interior door entries. We hold that the announcement of authority and purpose at the front door, in the present case, was sufficient to meet the requirements of § 3109, vitiating any duty to repeat the notice at the [closed] inner bedroom door." (657 F.2d at p. 1045; see also *United States* v. *Patrick* (D.C. Cir. 1992) 959 F.2d 991, 999 [294 App.D.C. 393]; *United States* v. *Remigio* (10th Cir. 1985) 767 F.2d 730, 732, fn. 2.)[6]

Under relevant federal decisions, the instant search would be upheld. We are persuaded by the logic of those decisions that the same outcome should obtain under a reasonable construction of section 1531.

 While there may be instances where repeated knock-notice is required, such as where the residence is unusually large, the outer door does

---

[6]Although there were certain facts in *Crawford* suggesting the presence of exigent circumstances (i.e., the officers knew of Crawford's dangerous background and had been informed he was carrying a gun earlier in the day), the *Crawford* court eschewed exigent circumstances excusing strict compliance with the statute as a basis for its holding: "We do not hold that exigent circumstances existed excusing any required compliance with section 3109, since the issue was not specifically argued in the district court." (657 F.2d at p. 1045, fn. 5.)

not provide access to the place to be searched under the warrant, or where a single room is the only area subject to search under the terms of the warrant (see *Livermore, supra,* 30 Cal.App.3d at p. 1077, fn. 3), none of these situations is presented here.

■ Here, the officers fully complied with section 1531 at the front door to the house in a manner reasonably calculated to provide notice to all inside. Having fully complied with section 1531 at the outer door, the officers were under no constitutional or statutory obligation to repeat the knock-notice litany once inside. The magistrate erred in ruling the search ran afoul of section 1531.

■ Moreover, the magistrate erred in suppressing the items seized from defendant Rose's purse. (See *People* v. *Berry* (1990) 224 Cal.App.3d 162, 169 [273 Cal.Rptr. 509]; *People* v. *McCabe* (1983) 144 Cal.App.3d 827, 830 [192 Cal.Rptr. 635]; *U.S.* v. *Giwa* (5th Cir. 1987) 831 F.2d 538, 544-545 and authorities cited therein.) Rose was more than a "mere visitor" (See *People* v. *Berry, supra,* 224 Cal.App.3d at p. 169); when the officers entered the house, Rose was inside in bed, indicating she had "more than just a temporary presence in the [residence]." (*U.S.* v. *Giwa, supra,* 831 F.2d at pp. 544-545.) Accordingly, her personal effects could properly be searched. (*Ibid.*)

The order denying reinstatement of the complaint is reversed. The matter is remanded to the superior court with directions to enter an order granting the People's motion to reinstate the complaint and to take such further proceedings as are required by law.

Sparks, J., and Raye, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 16, 1993. Mosk, J., and Panelli, J., were of the opinion that petition should be granted.