[No. H014132. Sixth Dist. Aug. 15, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JAIME AGUILAR, Defendant and Appellant.

634

**Counsel**

Scott F. Kauffman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

ELIA, J.—After his motion to suppress was denied, Jaime Aguilar pleaded guilty to possessing cocaine for sale while armed with a firearm (Health & Saf. Code, § 11351; Pen. Code, § 12022, subd. (c)); possessing marijuana for sale (Health & Saf. Code, § 11359) and possessing cocaine base for sale while armed with a firearm (Health & Saf. Code, § 11351.5). Aguilar also admitted having a prior conviction. On appeal, Aguilar argues that his motion to suppress should have been granted. We will affirm.

*Facts and Procedural Background*

On April 13, 1994, about 10:40 p.m., members of the R.E.D. team (Regional Enforcement Detail), arrived at 2014 Colony Street, apartment

No. 9, in Mountain View. They planned to serve arrest warrants on appellant and Cecilio Zaragosa.[1]

The R.E.D. team was organized to combat street crime in the Palo Alto area. Appellant and Zaragosa were believed to be engaged in criminal activities with the "Sac Street" gang—an East Palo Alto gang involved with drug sales, stolen cars, and weapons possession. According to one of the members of the R.E.D. team, Palo Alto Police Officer Glenn Hardin, appellant's criminal record included arrests for possessing a concealed weapon and assault with a deadly weapon.

On April 12, 1994, a confidential informant had told Hardin and Officer Gregory Marsh that appellant, Zaragosa and another gang member, Sergio Garcia, were staying at 2014 Colony Street, apartment No. 9. The informant, who had previously provided reliable information to the police, personally knew appellant, said that the men were armed, and said appellant possessed a 9-millimeter handgun. The informant also stated that appellant sold crack cocaine on Sacramento Street in the mornings, before dawn, and drove a car, which the informant described.

Around 1 a.m., on April 13, 1994, East Palo Alto Officer John Chalmers saw in the rear parking lot of the apartment complex a white Mazda which matched the description provided by the informant.

Later that day, about 10:40 p.m., Mountain View Police Officers Russell Barcelona and Sonny Talmantez led the officers to the apartment door at 2014 Colony Street. They knocked on the door. Appellant answered the knock. The officers immediately recognized appellant. The officers told appellant that they were there on a complaint of loud music. Appellant started to back away. The officers entered the apartment. Barcelona placed appellant in custody facedown in the living room about 10 feet from the front door. Zaragosa, who was seated on a couch in the living room, was also arrested. One of the officers saw a baggie of marijuana in plain view.

The officers then performed a protective sweep of the apartment since they had information indicating that at least one other person—Sergio Garcia—would be there and that firearms were present. During the protective sweep, Officer Michael Honiker shouted "Police, police."

Officers Chalmers and Honiker went down the hallway which led to two bedrooms on either side. One door was open; the other door was shut.

---

[1] A warrant for appellant's arrest was issued by the San Mateo County Superior Court based on his failure to appear for sentencing on March 30, 1993.

Chalmers entered "the open bedroom real quick, made sure there wasn't anybody at my back side, and I turned my attention towards the closed door." Chalmers then opened the door to the other bedroom "got [it] about an inch open and then it slammed shut on me." As he tried to force open the door, Officer Chalmers accidentally put his foot through the door and needed Officer Honiker's assistance to extricate it.

Officer Honiker had progressed from the living room to the open bedroom, which he entered to "make sure that there [were] no threats, other people in that room." He searched for "bodies, anybody hiding, hiding under beds, hiding in the closet, hiding under clothes, behind furniture." He found no one, but did spot a handgun in a shoulder holster on the floor near the door. He then saw Officer Chalmers put his foot through the door to the other bedroom. Officer Honiker then assisted Chalmers in removing his foot. The door was then opened by the room's occupant, Daniel Aguilar.

Chalmers explained to Daniel that they had an arrest warrant for his brother and had received information that he was staying at the apartment. After advising Daniel of his constitutional rights, Chalmers asked for permission to search the apartment. Daniel agreed to talk to the officers. He gave permission to search the apartment except he refused permission for the officers to search his brother's bedroom. Based upon Daniel's consent, police searched the kitchen. They found a baggie of marijuana in one of the cabinets.

Police then obtained a warrant for the search of the apartment. In the open bedroom they found a "large amount" of cocaine and cash in a blue backpack beneath the bed. They also found more cash in clothing in the closet and a bag of rock cocaine in a jacket on the floor.

After appellant was arrested, he filed a motion to suppress evidence, arguing that the police violated the knock-notice requirements and that Daniel's consent to search the apartment was obtained as a result of police coercion. The trial court denied the motion to suppress.

Appellant then pleaded guilty to possessing cocaine for sale while armed with a firearm (Health & Saf. Code, § 11351; Pen. Code, § 12022, subd. (c)); possessing marijuana for sale (Health & Saf. Code, § 11359) and possessing cocaine base for sale while armed with a firearm (Health & Saf. Code, § 11351.5). Aguilar also admitted having a prior conviction. He was sentenced to a total of eight years in state prison.

This appeal ensued.

## Standard of Review

 When we review the denial of a motion to suppress, we view the record in the light most favorable to the trial court's ruling. We defer to the trial court's findings of fact, whether express or implied, if those findings are supported by substantial evidence. We independently determine what legal principles are relevant, and apply those principles to the facts. We determine as a matter of law whether the search or seizure was unreasonable. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221]; see also *People* v. *Miranda* (1993) 17 Cal.App.4th 917, 922 [21 Cal.Rptr.2d 785].)

## Discussion

### I. *Knock-notice*[2]

 Appellant argues the police violated the knock-notice requirement when they entered Daniel Aguilar's bedroom. The People argue that the knock-notice requirement does not apply to entry to "inner" doors but only applies to the official entry into the house. Before addressing this contention, we first review the applicable law.

The issue of knock-notice with respect to inner and outer doors has been discussed in the context of Penal Code section 1531.[3] Section 1531 provides, "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute a warrant, if, after notice of his authority and purpose, he is refused admittance."

 The purposes and policies which support section 1531's knock-notice rules are fourfold: "(1) the protection of the privacy of the individual in his [or her] home; (2) the protection of innocent persons present on the premises; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his [or her] home without proper notice; and (4) the protection of police who might be injured by a startled and fearful householder." (*People* v. *Macioce* (1987) 197 Cal.App.3d 262, 271 [242 Cal.Rptr. 771].)

The cases are split on the issue of whether police are constitutionally required to give knock-notice at a closed inner door. *People* v. *Webb* (1973)

---

[2]The People argue that appellant does not have standing to raise this issue or the issue of Daniel Aguilar's consent to the search. Appellant contends that the People stipulated to the standing issue at the hearing on the motion to suppress. Appellant also points out that the People never raised the standing issue below. The record is not clear with respect to the stipulation but it is true that the People did not raise the issue of standing below. We will therefore give appellant the benefit of the doubt and address the merits of his argument.

[3]All subsequent statutory references are to the Penal Code.

36 Cal.App.3d 460 [111 Cal.Rptr. 524]; *People* v. *Glasspoole* (1975) 48 Cal.App.3d 668 [121 Cal.Rptr. 736]; and *People* v. *Pipitone* (1984) 152 Cal.App.3d 1112 [201 Cal.Rptr. 18] hold that knock-notice is required at inner doors, as well as outer doors. *People* v. *Livermore* (1973) 30 Cal.App.3d 1073 [106 Cal.Rptr. 822]; *People* v. *Castaneda* (1976) 58 Cal.App.3d 165 [129 Cal.Rptr. 755]; *People* v. *Pompa* (1989) 212 Cal.App.3d 1308 [261 Cal.Rptr. 417]; and *People* v. *Howard* (1993) 18 Cal.App.4th 1544 [23 Cal.Rptr.2d 212] hold that knock-notice only applies to entry to a house and need not be repeated at inner doors. A federal decision, *United States* v. *Crawford* (9th Cir. 1981) 657 F.2d 1041, also holds that knock-notice does not apply to inner doors.

Recently, in *People* v. *Howard, supra,* 18 Cal.App.4th 1544, the court analyzed these conflicting decisions. It noted that *People* v. *Webb, supra,* 36 Cal.App.3d 460, which held that knock-notice was required for inner doors, relied upon section 1531's language which specifically refers to outer doors as well as inner doors. Rejecting *Webb*'s construction of section 1531, *Howard* reasoned, "If the *Webb* court is correct in its interpretation of 'the explicit terms' of section 1531, then as a matter of consistent grammatical construction knock-notice must precede not only the 'break[ing] open' of 'any outer or inner door or windows of a house' but also the 'breaking open' of 'any part of a house' as well as 'anything therein.' '[A]ny part of a house' would include closets, crawl spaces, a furnace, etc. '[A]nything therein' would include everything therein which one could 'break open' such as wardrobes, chests of drawers, cupboards, sideboards, bathroom and kitchen drawers, . . ." (*People* v. *Howard, supra,* 18 Cal.App.4th at pp. 1549-1550, italics omitted.)

Recognizing that section 1531 "is not an exemplar of perfect draftsmanship," *Howard* decided that the most reasonable interpretation was that "notice of authority and purpose, i.e., knock-notice, is required to gain admittance to a house, and once complied with, any part of the house or anything therein may be broken open as required to execute the warrant. So also may an outer access way be broken open to gain admittance after refusal of entry." (18 Cal.App.4th at p. 1550.) *Howard* also emphasized that its construction served the policies behind the statute, while a contrary rule would not achieve those same ends.

In this case, the People note, an arrest warrant was involved, and therefore they point out that section 844, rather than section 1531, is applicable. Unlike section 1531, section 844 does not refer to "inner doors." Instead, section 844 provides: "To make an arrest, a private person, if the offense is a felony, and in all cases a peace officer, may break open the door or

window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing the person to be, after having demanded admittance and explained the purpose for which admittance is desired." Accordingly, the People argue that even if we decline to follow *Howard*, the police conduct here was still proper under the plain terms of section 844.

Appellant argues that section 844 is irrelevant. He argues that the police knocked and announced at the front door, entered and then immediately arrested appellant. Thus, according to appellant, section 844's purpose was served and it has no further application to the circumstances which subsequently unfolded. Instead, appellant argues, the issue is whether section 1531 applied to the postarrest "protective sweep" and required that the police knock and announce on Daniel Aguilar's bedroom door before entering.

■■■ Assuming arguendo that appellant is correct about the applicability of section 844, we nonetheless agree with *Howard*. We hold that the police were not required to knock and announce at Daniel Aguilar's bedroom door. The privacy interests which section 1531 seeks to safeguard were adequately protected by the fact that the police officers knocked and announced before they initially entered the apartment. By arguing that the analysis begins with the fact of the "protective sweep," appellant seems to suggest that we pretend that the original knock-notice never occurred. We refuse to indulge in this fiction. Finally, to the extent that appellant quarrels with *Howard*, and contends that knock-notice is required at both the original entry and at inner doors, we simply disagree. We think that *Howard* is the better reasoned decision and we will follow it.

## II. *Consent*

■■■ Appellant argues that Daniel Aguilar's consent to the search of the home was coerced. We disagree.

■■■ The prosecution bears the burden of showing that the consent to a search is voluntary and unaffected by duress or coercion. (*Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548-549 [20 L.Ed.2d 797, 802-803, 88 S.Ct. 1788]; see also *People* v. *Llamas* (1991) 235 Cal.App.3d 441, 446-447 [286 Cal.Rptr. 467].) In every case, the voluntariness of a consent is a factual question to be decided in light of all the circumstances. (*People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].) The trial court's findings, on the issue of consent, whether express or implied, will be upheld on appeal if supported by substantial evidence. (*People* v. *James*,

*supra*, 19 Cal.3d at p. 107, *People* v. *Llamas*, *supra*, 235 Cal.App.3d at p. 447.)

■ Appellant argues his consent was coerced based upon the following factors: the lateness of the hour, the display of the weapon, the fact that Daniel was handcuffed, the number of officers and the failure of the officers to advise Daniel of his right to refuse consent. We do not believe these facts require that the trial court's finding of consent be rejected.

In *People* v. *Ratliff* (1986) 41 Cal.3d 675 [224 Cal.Rptr. 705, 715 P.2d 665], the California Supreme Court upheld a finding of consent even though the evidence revealed that several officers entered the suspect's home at 6 a.m., awakened him with drawn guns, placed him in handcuffs, and told him that a warrant would be sought if he refused consent. (*Id.* at pp. 678-679.) In this case, by contrast, Daniel was not awakened by the officer's entry, and was not told that a warrant would be sought if he refused consent. Moreover, Daniel refused to give the officers consent to search appellant's room. The fact that Daniel refused consent to search appellant's room shows that he was aware of his right to refuse consent and shows that his consent to search the rest of the home was not the product of police coercion. To the extent that appellant contends the police exceeded the scope of Daniel's consent, that argument is based upon testimony necessarily rejected by the trial court.

*Disposition*

The judgment is affirmed.

Premo, Acting P. J., and Wunderlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 13, 1996.